## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LESLIE PURNELL,

       Plaintiff,

v.                                    Case No. 05-CV-73384-DT

ARROW FINANCIAL SERVICES, LLC,

       Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50

Pending before the court is a threshold statute of limitations issue that the court must decide on the eve of the parties' scheduled trial date.[1]  The parties have stipulated to several important facts, filing on February 1, 2007 a "Joint Submission Regarding Statute of Limitations Defense" ("JS").  For purposes of deciding how the statute of limitations applies, the parties have presented a trial on the papers.  As such, the court must decide pursuant to Federal Rule of Civil Procedure 50 whether Plaintiff Leslie Purnell's federal claim is time-barred and, therefore, judgment as a matter of law should issue for Defendant Arrow Financial Services, LLC.  The court will therefore construe "Defendant's Position" in the JS as a motion for judgment as a matter of law under Rule 50.  The court will, for the reasons stated below, deny the motion.

_____

[1]Defendant raised this issue in its motion for summary judgment.  Defendant's previous counsel, however, withdrew the motion on October 12, 2006.  Although its new counsel filed essentially the same motion on January 19, 2007, it was untimely pursuant to the court's scheduling order and the court dismissed the motion on that ground. (1/23/07 Order.)  In neither instance did the court reach the merits of the motion.

# I.  BACKGROUND AND STIPULATED FACTS

This case centers upon attempts to collect a debt attributed to Plaintiff that dates back to the 1980s.  Plaintiff denies ever incurring the debt, which he believes is the result of fraud by some other party not before the court.  Defendant entered the picture when it acquired the debt as a third party and attempted to collect the debt.   (JS ¶ 1.) Plaintiff disputed the debt in writing to Defendant in October 2001.  (*Id.* at ¶ 3.) Beginning in June 2004, Defendant began reporting the debt to Equifax, a credit reporting agency, without a dispute marker.  (*Id.* at ¶ 4.)[2]  Between June 2004 and July 2005, Defendant continued, on a monthly automated basis, to report the debt without a dispute marker.  (*Id.* at ¶ 5.)  Plaintiff in October 2005 disputed to Equifax the debt that he allegedly owed to Defendant.  (*Id.* at ¶ 6.)  Equifax sent a consumer dispute verification form to Defendant, which Defendant used to verify the account.  (*Id.* at ¶¶ 6-7.)  In that verification, Defendant failed to note that the debt was disputed.  (*Id.* at ¶ 7.) Earlier, Plaintiff filed his complaint against Defendant on September 1, 2005, alleging one Fair Debt Collection Practices Act ("FDCPA") claim and two state claims.  Because of the one-year statute of limitations described below, Plaintiff's FDCPA claim does not arise from any alleged violations by Defendant before September 1, 2004.  (*Id.* at ¶ 2.)

## II.  STANDARD

According to Federal Rule of Civil Procedure 50(a):

(1)  If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that

---

[2]By implication, and according to representation by the parties' counsel at the final pretrial conference, Defendant had earlier reported the debt with a dispute marker.

2

party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2)  Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such motions shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

"Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005) (citations omitted).

## III.  DISCUSSION

Plaintiff's federal claim arises under the FDCPA, 15 U.S.C. § 1692 *et seq.* Congress passed this law with the express purposes "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The FDCPA prohibits debt collectors from making false or misleading representations in connection with the collection of a debt.  15 U.S.C. § 1692e.  Specifically, Plaintiff contends that Defendant violated the following provisions of Section 1692e, (Pl.'s Compl. at ¶16):

(2) The false representation of –
    (A) the character, amount, or legal status of any debt; or
    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt
. . .

> (8) Communicating or threatening to communicate to any person credit
> information which is known or which should be known to be false,
> including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e.  The statute also bans certain "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Plaintiff also contends that Defendant violated Section 1692f(1), which prohibits "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Plaintiff must bring any claim under FDCPA "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).

Defendant raised the statute of limitations as an affirmative defense in its first amended answer.  (Def.'s First Am. Ans. at 5.)  Because the question is properly before the court and otherwise not waived, the court need not decide the parties' disagreement regarding whether the question is jurisdictional and therefore assertable at any point in the proceedings.  The court can instead turn to the merits of the parties' arguments concerning how to apply the statute of limitations.

Because relevant binding caselaw is limited, the court will consider persuasive published and unpublished case law from other jurisdictions.  These cases have considered different variations of the continuing violation theory and reached different conclusions under different circumstances about whether an FDCPA claim is time-barred.

Courts have rejected the argument that the filing of papers in court on an old debt constitutes a new communication that would extend the period of limitations.  For example, in *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1998), the court rejected the theory, stating that under such a theory FDCPA claims "could be kept

alive indefinitely because each new communication would start a fresh statute of limitations." *See also Calka v. Kucker, Kraus & Bruh, LLP*, No. 98-0990, 1998 WL 437151 (S.D.N.Y. Aug. 3, 1998) (holding that the FDCPA claim accrued at the latest on the date a state action was filed, and rejecting the theory that subsequent proceedings, including filing an amended complaint and a motion for summary judgment, reset the period of limitations). However, misconduct during litigation can give rise to fresh FDCPA claims if, for instance, the debt collector is alleged to execute and file false affidavits. *Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000).

Importantly, *Sierra* stressed that "[t]his is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred." 48 F. Supp. 2d at 395. Indeed, several cases that concerned multiple demand letters, some of which were time-barred, have held that new demand letters that fall within the period of limitations give rise to FDCPA claims. *Pittman v. J.J.MacIntyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D.Nev. 1997); *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355 (S.D.Fl. 2000); *Murphy v. MRC Receivables Corp.*, No. 06-0299, 2007 WL 148823 (W.D.Mo. Jan. 12, 2007).

Other cases focus less on the conduct of the debt collector and more upon the knowledge of the consumer. In *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp. 2d 492, 501 (D.Md. 2004), the court dismissed an FDCPA claim because the plaintiff filed suit over two years after he became aware of the alleged violation by the debt collector. *See also Flores v. Millenium Interests, Ltd.*, 273 F. Supp. 2d 899, 901 (S.D.Tex. 2003) (holding that the consumers "knew of the negative credit report in August 2000; this lawsuit, filed in February 2003, is one and one-half years too late.");

*Campos*, 120 F. Supp. 2d at 1274 (rejecting statute of limitations defense and holding in the alternative that the consumers in any event filed suit within one year of becoming aware of the FDCPA violations).  Similarly, another court held, without citation to authority, that "[t]he violation accrues when the debtor receives notice of the misrepresentation."  *Kirscher v. Messerli & Kramer, P.A.*, No. 05-1901, 2006 WL 145162 (D.Minn. Jan. 18, 2006).  The same court held in an earlier case that the consumer knew of the violation upon receipt of the first demand letter and that repetition of the same information in the filing of a complaint did not begin a new period of limitations.  *Fraenkel v. Messerli & Kramer, P.A.*, No. 04-1072, 2004 WL 1765309 (D.Minn. July 29, 2004).

Finally, the parties dispute the importance of *Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006 (D.N.D. 2006).  This case is factually most analogous to the one before the court, as it also involves a FDCPA claim against a company that acquired a debt as a third party and, after contact with the alleged debtor, failed to mark the debt as disputed.  *Id.* at 1007.  The court, after summarizing several of the above cases without comment, rejected a "serial violations" theory and held that the claim accrued "shortly after" the consumer first sent a letter disputing the debt.  *Id.* at 1009.  Because the suit was filed over a year past that date, the court dismissed the claims as untimely.  *Id.*

The above case law reveals a tension between avoiding either resurrecting time-barred claims on technical grounds or dismissing meritorious claims based upon violations that are in some sense repetitive yet constitute fresh harm to the consumer. The language of the statute requires plaintiffs to file suit "within one year from the date on which the *violation* occurs."  15 U.S.C. § 1692(k)(d) (emphasis added).  The statute

thus places significance on when a violation is made, not when it is made known.[3]

There are at least two kinds of violations at issue in this case:

> (1) The "failure to communicate that a disputed debt [by Plaintiff] is disputed" under Section 1692(e)(8), and

> (2) The "false representation of . . . the character, amount, or legal status of [Plaintiff's] debt" under Section 1692(e)(2)(A).[4]

The statute's definition of communication is broad: "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).  It cannot be doubted that Defendant's monthly reports to Equifax were communications.  Each report was a discrete conveying of information regarding Plaintiff's alleged debt.  The parties have stipulated that, in at least fifteen such monthly communications to Equifax, Defendant failed to mark the debt as disputed.[5]  Eleven of these communications, beginning with the one in September 2004, fell within the year before Plaintiff filed suit on September 1, 2005.  Each monthly report presented a separate harm to Plaintiff under the statute and, for that matter, an independent opportunity for Defendant to comply with the statute.  Congress has identified as

---

[3]Even if the latter interpretation were considered, it raises a new problem because it raises the question: made known *to whom*?

[4]To the extent that this theory of recovery asserts that Defendant is liable for merely reporting a fraudulent debt, the court has a few observations.  First, Plaintiff is left to his proofs regarding the fraudulent nature of the debt, which is a question of fact.  Second, Defendant is free to defend under the doctrine of bona fide error, which likely is also a question of fact.  Elsewhere in the statute, Congress refers to communication of credit information "which is known or which should be known to be false."  15 U.S.C. § 1692e(8).

[5]Though it is not relevant for purposes of this determination, Defendant offers that the reason the dispute marker was lost was because Defendant converted to a new standardized reporting format.  (JS at 3.)

harmful the failure to report a disputed debt as disputed, and, whatever the wisdom of that policy choice, Congress did not distinguish between communications that were intended and knowing as opposed to unintended and automatic.  Indeed, the "directly or indirectly" language of Section 1692(a)(2) suggests that Congress saw no difference between the two.  From the perspective of a consumer disputing a debt, it similarly matters not how it is that a dispute marker is lost.  The harm inheres in the simple fact that information about an apparently undisputed debt in that person's name exists in the credit reporting industry, which can have untold negative consequences for people who engage in commerce.

The court therefore rejects caselaw that states an FDCPA claim accrues at some point other than, as Section 1692(k)(d) requires, "the date on which the violation occurs."  Specifically, the court will not follow the holding of *Wilhelm*, which held that the claims accrued shortly after the consumer's first letter disputing the debt.  455 F. Supp. 2d at 1009.  Because Section 1692(k)(d) is silent about the conduct of the consumer, the date of dispute is irrelevant.  Again, the relevant consideration is the date of the alleged violation by the debt collector.  In this case, several violations occurred well within the period of limitations in the form of communications that failed "to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  Further, after the filing of this suit, Defendant failed in October 2005 to note in a confirmation form to Equifax that the debt is in fact disputed.  Under the circumstances, the stipulated facts before the court do not raise a viable statute of limitations defense for Defendant.

The court will stress, however, that this opinion and order does not decide the case.  It merely decides that the case will go forward.  The parties are left to their proofs

8

and arguments before the finder of fact, which should focus mainly upon allegations

falling within the limitations period.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's motion for judgment as a matter of law under

Rule 50 [Dkt #58-1] is DENIED.

     S/Robert H. Cleland
     ROBERT H. CLELAND
     UNITED STATES DISTRICT JUDGE

Dated:  February 2, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 2, 2007, by electronic and/or ordinary mail.

     S/Lisa Wagner
     Case Manager and Deputy Clerk
     (313) 234-5522