**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LESLIE PURNELL,

    Plaintiff,

v.                                                   Case No. 05-CV-73384-DT

ARROW FINANCIAL SERVICES, LLC,

    Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
"MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL" AND
"AMENDED MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT"**

Pending before the court are Plaintiff Leslie Purnell's Motion for Judgment as a Matter of Law or for New Trial," filed on February 19, 2007 pursuant to Federal Rule of Civil Procedure 50(b) and Plaintiff's "Amended Motion for New Trial or to Alter or Amend Judgment," filed on February 20, 2007 pursuant to Federal Rule of Civil Procedure 59(a) and 59(e). Defendant Arrow Financial Services, LLC filed a combined response addressing both motions. After reviewing the motions, the court concludes that a hearing is unnecessary. E.D Mich. LR 7.1(e)(2). Plaintiff's motions will be denied for the reasons set forth below.

**I. BACKGROUND**

Plaintiff's original claims against Defendant included both federal and state violations under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq* and the Michigan Occupational Code, Mich. Comp. Laws § 339. On February 6, 2007, the court began the first part of a bifurcated jury trial to decide the threshold factual question of the case: Defendant's *bona fide* error defense. Defendant admitted

that it erroneously reported Plaintiff's account without a dispute marker to Equifax, a credit bureau reporting agency, on eleven occasions within the one-year statutory period, in violation of 15 U.S.C. § 1692e(8). Following this admission, Defendant set forth an affirmative defense of *bona fide* error, governed by 15 U.S.C. § 1692k(c). The jury accepted this defense, returning a verdict in favor of Defendant. The court then dismissed Plaintiff's state law claims and closed the case, as no viable federal action remained. (2/9/07 Order.)

The state law claims were dismissed pursuant to 28 U.S.C. § 1367(c), which allows this court to dismiss all state claims if "the district court has dismissed all claims over which it has original jurisdiction." In this case, the federal claims afforded the court jurisdiction. When those claims ran their course, the court then had the discretion to dismiss the state law claims, which did not independently afford this court jurisdiction. Further, the court noted that since only a limited trial for narrow and discrete factual issues was conducted, "considerations of judicial economy do not weigh in favor of further proceedings resolving the state claims." (2/9/07 Order at 2.)

Plaintiff now moves for a judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50(b) and pertaining to the validity of Defendant's *bona fide* error defense. Regarding the court's dismissal of all remaining claims, Plaintiff moves for a new trial or to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(a) and (e).

## II. STANDARD

### A. Federal Rule of Civil Procedure 50(b)

If a party moved for judgment as a matter of law pursuant to Rule 50(a) before submission of the case to the jury if the decision of the jury is adverse to that party, it may subsequently move to renew that motion or alternatively seek new trial under Rule 50(b). The court may grant the renewed motion if "there is no legally sufficient evidentiary basis for a reasonable jury to find" the way it did. Fed. R. Civ. P. 50(a)(1) & (b). The standard is essentially the same as that for summary judgment under Federal Rule of Civil Procedure 56. In deciding this motion, the court must view the evidence "in the light most favorable to the party against whom the motion is made, and that party [must be] given the benefit of all reasonable inferences. *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997).

### B. Federal Rule of Civil Procedure 59(a)

Federal Rule of Civil Procedure 59(a) provides, in pertinent part, that:

> A new trial may be granted to all or any of the parties on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the Courts of the United States . . .

Fed. R. Civ. P. 59(a). The Supreme Court has noted that "the authority of trial judges to grant new trials" pursuant to Rule 59(a) "is large". *Gasperini v. Ctr. for the Humanities Inc.,* 518 U.S. 415, 433 (1996) ("The trial judge in the federal system, we have reaffirmed, has . . . discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.") Under this standard, courts have reversed

3

decisions granting new trials upon having "definite and firm convictions . . . that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors." *Homes v. City of Massilon,* 78 F. 3d 1041, 1045 (6th Cir. 1996), *cert. denied,* 519 U.S. 935, 117 S.Ct. 12, 136 L.Ed.2d 228 (1996).

### C.  Federal Rule of Civil Procedure 59(e)

A motion to alter or amend judgment should be granted only "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999). "Rule 59(e) motions are not to be used to relitigate matters already argued and disposed of; they are intended to permit the Court to correct errors of fact appearing on the face of the record, or errors of law." *Indep. Petroleum Ass'n of Am. v. Babbit,* 178 F.R.D. 323, 324 (D.D.C. 1998). Additionally, a party wishing to alter or amend a judgment may not "raise arguments which could and should have been made before judgment issued." *Sault St. Marie Tribe of Chippewa Indians v. Engler,* 146 F. 3d 367, 374 (6th Cir. 1998). "Rather than filing a Rule 59(e) motion, the proper action for a party seeking redress on issues previously litigated is to appeal." *Keenan v. Bagley,* 262 F Supp. 2d 826, 830 (N.D. Ohio 2003).

### III. DISCUSSION

### A.  Plaintiff's Rule 50(b) Motion

Plaintiff's motion must be denied because reasonable minds could come to a conclusion other than one favoring the movant. *Williams,* 132 F.3d at1131. Defendant has admitted it violated 15 U.S.C. §1692e(8), which states:

4

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

Following this admission, however, Defendant set forth a *bona fide* error defense, governed by 15 U.S.C. §1692k(c), which states:

> (c) Intent: A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from an error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The jury found that Defendant proved the following three elements required for the defense:

1. it made an unintentional error
2. the error was made in good faith
3. the error was made notwithstanding procedures which were reasonably adapted to prevent the error[1]

### 1. Defendant has satisfied the unintentional element of the defense

Defendant was only required to show that the "violation" was unintentional, not that the "communication" itself was unintentional. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 401-02 (6th Cir. 1998). The Sixth Circuit has held that "the *bona fide* error defense applies only to clerical errors." *Smith v. Transworld Sys., Inc*, 953 F2d 1025, 1034 (6th Cir. 1992). The 15 U.S.C. §1692e(8) violation occurred due to Defendant's failure to place a dispute marker on Plaintiff's account for credit reporting purposes. Defendant, however, did provide undisputed evidence that it did, at least initially, place a marker on Plaintiff's account following a call from Plaintiff on August 23, 2002. The jury found that Plaintiff's markers were lost in June 2004 when Defendant converted all

---

[1] Jury instructions [Dkt. #63 at 9]; *see also Edwards v. McCormick,* 136 F. Supp. 2d 795, 800 (S.D. Ohio 2001).

accounts to a new system, "Metro 2". This new format, introduced by the credit reporting industry, replaced the "Metro 1" format.

Defendant has presented sufficient evidence to demonstrate that the conversion process from Metro 1 to Metro 2 was the unintentional cause of the reporting error. Brian Cutler, Defendant's executive vice-president and chief technology officer, testified that in September 2003 over twenty-two million accounts had to be reformatted and converted. Defendant argues that this would amount to a "vast undertaking that required months of advance planning and testing." (Def.'s Resp. at 6.) Cutler further testified that Defendant worked with Ontario Systems, the software vendor, and the major credit bureaus (Equifax, TransUnion and Experian) to make sure that the conversion would occur without problems. *Id.* Cutler testified that after several "dry runs" to check for problems, no issues regarding the dispute markers arose. *Id.* This was, according to the jury, a reasonable effort on Defendant's part.

Further, Cutler testified that, according to his knowledge, this case represents the only instance, out of 22 million accounts, of a marker being deleted. *Id.* Plaintiff offered no evidence to rebut Cutler's testimony that this error was an unintentional result of the conversion process and that it apparently had only affected one in 22 million accounts. Viewed in the light most favorable to defendant, the court finds that there was a sufficient evidentiary basis to satisfy the first element of the *bona fide* error defense.

### 2. **Defendant has satisfied the good faith element**

The jury found that Defendant has shown that it has acted in good faith, satisfying the second element of the defense. Plaintiff's allegations that Defendant has

6

attempted to "raise a violation of the FDCPA as a defense to a different violation," (Pl.'s Br. at 11), is unwarranted. Defendant's *bona fide* error defense is applied to the failure of marking an account as disputed. The *bona fide* error itself is not a violation of the FDCPA, therefore Plaintiff's reliance on *Seabrook v. Onondaga Bureau of Medical Economics, Inc.,* 705 F.Supp. 81 (N.D.N.Y., 1989), is misplaced.

Courts have defined "good faith" in several ways: (1) genuine mistakes, as opposed to contrived mistakes, (2) errors without fraud, (3) sincere errors and (4) an error resulting despite efforts taken with due care. *See* Black's Law Dictionary 168 (7th ed. 1999); *see also Kort v. Diversified Collection Services,* 394 F. 3d 530, 538 (7th Cir. 2005); *Edwards, v. McCormick,* 136 F. Supp. 2d 795, 801 n. 8 (S.D. Ohio 2001). Further, an error that results despite an active effort to exercise due care to avoid making the mistake has been considered an error in "good faith." *Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir. 2004). As described below, it was reasonable for the jury to conclude that Defendant has exercised such due care, albeit not perfectly, in an attempt to avoid such errors.

The jury had a reasonable basis to find that Defendant's error was made in good faith. Undisputed evidence has shown that Defendant initially placed a dispute marker on Plaintiff's account after plaintiff's phone call on August 23, 2002. Defendant reported the account as undisputed only when the conversion from Metro 1 to Metro 2 erased the marker. Plaintiff has offered no evidence to show that Defendant acted fraudulently, in bad faith, or in any other way that would prevent the "good faith" requirement from being met.

### 3. Defendant has satisfied the third element of the defense

A reasonable jury could find that Defendant established by a preponderance of the evidence that it maintained procedures reasonably adapted to avoid errors. In this regard, the law does not require a debt collector to take every conceivable precaution to avoid errors; rather it only requires reasonable precaution. *Kort,* 394 F.3d at 539. Defendant presented evidence demonstrating that it took several reasonable measures to prevent such errors. Although the measures failed in regards to Plaintiff's account, such a massive and complex conversion is susceptible to at least a small number of errors. It would be unreasonable to expect Defendant to conduct a perfect conversion. Viewed in context, the mere existence of errors in Plaintiff's account does not of its own accord compel the conclusion that Defendant failed to implement procedures reasonably adapted to prevent such errors.

Cutler's testimony provides further information that illustrates additional precautions Defendant took. Following the nine-month preparation period and subsequent conversion process, it would have been unreasonable, and in fact impossible, for Defendant to undertake the duty of double-checking all twenty-two million accounts without any notice of dispute by a debtor. As noted in *Kort*, a debt collector need only act reasonably to avoid errors, rather than take every conceivable precaution. *Id.* at 539. The jury properly found that Defendant's precautions prior to and during the conversion were reasonable. There was no additional duty to double-check all accounts without notice by a putative debtor. Plaintiff at first did not give Defendant notice of his marker dispute. Plaintiff argues that his phone call to Defendant on August 17, 2004 should have put Defendant on notice of the missing dispute marker.

(Pl.'s Br. at 5-6.)  Defendant, however, has provided evidence, including notes from the telephone conversation on Aug. 17, 2004, which include no mention of the marker.  The notes only refer to the account in general.  Plaintiff did not dispute this version of the telephone conversation at trial.  The jury, in any event, was free to weigh the above evidence.  Having no notice from Plaintiff, Defendant had no reason to double-check the dispute markers.

Because there was a legally sufficient evidentiary basis for a reasonable jury to find for the Defendant on the *bona fide* error defense, Plaintiff's motion, to the extent that it raises arguments under Rule 50, will be denied.

### B.  Plaintiff's Rule 59 Motion

The court is doubtful that Plaintiff's Rule 59 motion is in fact properly so labeled.  Rather than seek a new trial, Plaintiff instead appears to challenge the court's decision to (1) bifurcate the trial and (2) dismiss the remaining state claims.  The motion is thus more akin to a motion for reconsideration.  E.D Mich. LR 7.1(g).  The motion therefore may be untimely under the local rules.  Further, the court is not persuaded that the motion raises a palpable defect the correction of which would lead to a different outcome.  *Id.*  Applying Rule 59, the court will reach the same result.

On the merits, Plaintiff must meet a high standard under Rule 59.  Because Plaintiff does not suggest that there is any newly discovered evidence or a change in controlling law, this section addresses his claims that this court has made a clear error of law causing manifest injustice by bifurcating the trial and determining Defendant's *bona fide* error defense first.

9

Plaintiff's argument is not persuasive. Federal Rule of Civil Procedure 42(b) explicitly states that "the Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue . . . or issues . . . ." Here, the court advanced those interests by bifurcating the trial. The three relevant factors that have supported separation of issues are the following:

> (1) whether the issue was indeed a separate issue, (2) whether it could be tried separately without injustice or prejudice, and (3) whether the separate trial would be conducive to judicial economy, especially if a decision regarding that question would be dispositive of the case and would obviate the necessity of trying any other issues.

*In re Benecting Litig.,* 857 F.2d 290, 320 (6th Cir. 1988).

Due to the FDCPA's one-year statute of limitations, the only "collection activity" at issue in this case was Defendant's monthly automated credit reporting to Equifax, which lacked a dispute marker in violation of Section 1692e(8). Defendant's *bona fide* error defense, pertaining to the activities at issue, was accepted by the jury. Subsequently, the federal claims were dismissed. The bifurcation proved efficient and economically sound when the state law claims were also properly dismissed pursuant to 28 U.S.C. § 1367(c). This court appropriately declined jurisdiction over the remaining state law claims because all claims over which it had original jurisdiction were dismissed. The court also acted in accordance with Rule 42(b) when it bifurcated the trial. Further, judicial economy did not favor further proceedings for the state claims because only a limited trial was conducted for a narrow factual issue. For these reasons, the court did not abuse its discretion is dismissing all state claims when the claims for which it had original jurisdiction were dismissed.

Plaintiff claims that the court did not provide an opportunity for briefing or trial before dismissing the other FDCPA claims "sua sponte." (Pl.'s Br. at 1). The court disagrees. As noted in Defendant's response, during the month leading up to the trial, the court and the parties focused heavily on the statute of limitations issue and how it affected Plaintiff's various claims under the FDCPA. (Def.'s Resp. at 12). Further, the statute of limitations issue was also raised in Defendant's motion to dismiss for lack of subject matter jurisdiction, Defendant's motions in limine, the parties' trial briefs, the contested jury instruction submissions and the joint statement submitted February 1, 2007. The statute of limitations issue was also addressed at length in a pretrial conference of January 29, 2007, a telephone status conference on February 2, 2007 and another conference on the morning of trial. (Def.'s Resp. at 12). Plaintiff has had ample opportunity to be heard and the court is simply not persuaded by Plaintiff's theories. The FDCPA is not a strict liability statute in the broad sense that Plaintiff argues because it is subject to a *bona fide* error defense. At trial, the jury found for Defendant on the *bona fide* error defense. Plaintiff shall not be afforded the opportunity to relitigate such issues. The motion will be denied.

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's "Motion for Judgment as a Matter of Law or for New Trial" [Dkt. #71] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's "Motion for New Trial or to Alter or Amend Judgment" [Dkt. #72] is DENIED.

    S/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: June 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 26, 2007, by electronic and/or ordinary mail.

    S/Lisa Wagner
    Case Manager and Deputy Clerk
    (313) 234-5522